**MENDOZA v. WP COMPANY LLC
CASE NO. 23-998**

# Exhibit A

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
Civil Actions Branch
**500 Indiana Avenue, N.W., Suite 5000** Washington, D.C. 20001
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Emma Mendoza
5030 Parkcrest Dr.
La Porte, TX 77571
_____
Plaintiff

vs.

WP Company LLC d/b/a The Washington Post
1301 K Street NW
Washington, DC 20071
_____
Defendant

Case Number    2023-CAB-001101

Date: 3/21/23
Time: 2:30 P.M.
Initials J.C.

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Jeffrey Ostrow
_____
Name of Plaintiff's Attorney

1 W. Las Olas Blvd., Suite 500
_____
Address
Fort Lauderdale, FL 33301

(954) 525-4100
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date    March 6, 2023

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Dể có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                 Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

Emma Mendoza
5030 Parkcrest Dr.
La Porte, TX 77571

_____
Demandante

contra

WP Company LLC d/b/a The Washington Post       Número de Caso:    2023-CAB-001101
1301 K Street NW
Washington, DC 20071                          _____
_____
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Jeffrey Ostrow                                          *SECRETARIO DEL TRIBUNAL*
_____
Nombre del abogado del Demandante

1 W. Las Olas Blvd., Suite 500                 Por: _____
_____                      Subsecretario
Dirección
Fort Lauderdale, FL 33301

(954) 525-4100                                 Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을원하시면(202)879-4828로전화해주십시오.           የአማርኛ  ትርጉም  ለማግኘት  (202) 879-4828  ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                          Super. Ct. Civ. R. 4



# Superior Court of the District of Columbia
## Civil - Civil Actions Branch
### 500 Indiana Ave NW, Room 5000, Washington DC 20001
### (202) 879-1133 | www.dccourts.gov

**Case Number:** 2023-CAB-001101

**Case Caption:** Emma Mendoza v. WP Company LLC d/b/a The Washigton Post

### INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| Friday, 05/19/2023 | 9:30 AM | Remote Courtroom 518 |
| **Please see attached instructions for remote participation.** | | |
| Your case is assigned to Associate Judge Alfred S Irving. | | |

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated above. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4.

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated below, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Anita M. Josey-Herring

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb518

   Meeting ID: 129 685 3445

2) When you are ready, click "Join Meeting".
3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.

**Or to Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
2) Enter the Webex Meeting ID listed above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch Clerk's Office at (202) 879-1133.

## ACCESSIBILITY AND LANGUAGE ACCESS

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov . The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

## የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘሩትን የጸሀፊ ቢሮ (ክለርክ'ስ ኦፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያያትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.



## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

📞 202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

  📞 Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.
- You can also find the list of legal services providers at dccourts.gov/coronavirus by clicking on the link that says, "List of Legal Service Providers for Those Without an Attorney."
- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.
- Witnesses: tell the judge if you want a witness to testify at your hearing.
- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!
- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.
- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.
- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.). 
- Speak slowly and clearly so everyone hears what you are saying.
- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.
- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.
- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.
- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.
- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings
## (Click here for more information)

- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.
- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.
- Look at the camera when you speak and avoid moving around on the video.
- Wear what you would normally wear to court.
- Sit in a well-lit room with no bright lights behind you.
- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.



# District of Columbia Courts

# Tips for Using DC Courts Remote



The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings.  The Courts are committed to enhancing access to justice for all.

There are six remote access sites throughout the community which will operate: **Monday – Friday, 8:30 am – 4:00 pm**.

### The remote site locations are:



| **Remote Site - 1** | **Remote Site - 4** |
|---|---|
| Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
| **Remote Site - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Remote Site - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Remote Site - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | **Remote Site - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*** No walk-ins at this location*** |

If you want to use a remote site location for your hearing, call **202-879-1900** or email DCCourtsRemoteSites@dcsc.gov **at least 24 hours before your hearing to reserve a remote access computer station**.  If you require special accommodations such as an interpreter for your hearing, please call **202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements**.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your **case number** and any **hyperlinks** provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.
4. A facial covering will be required for entry into the remote hearing location; if you do not have a facial covering one will be provided.

**\*Safety and security measures are in place at the remote sites.**

**Contact information to schedule your remote access computer station:**
Call: **202-879-1900**
Email: DCCourtsRemoteSites@dcsc.gov



# Tribunales del Distrito de Columbia

## Consejos para usar los sitios de audiencia remota de los Tribunales de DC

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay seis sitios de acceso remoto que funcionarán de l**unes a viernes, de 8:30 am a 4:00 pm**.

### Los centros de acceso remoto son:

| **Sitio Remoto - 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Sitio Remoto - 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
| --- | --- |
| **Sitio Remoto - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Sitio Remoto - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Sitio Remoto - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | **Sitio Remoto - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*No se puede entrar sin cita previa* |



Si desea usar un sitio remoto para su audiencia, llame al **202-879-1900** o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov **al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto. Si** necesita adaptaciones especiales, como un intérprete para la audiencia, llame **al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.**

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***

1. Su **número de caso** y todos los **hipervínculos** que le hayan proporcionado los Tribunales para la audiencia programada.

2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.

3. Materiales para tomar nota, como papel y lápiz.

4. Para ingresar al sitio de la audiencia remota deberá llevar una mascarilla facial; si no tiene mascarilla facial, se le proporcionará una.

**\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.**

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: **202-879-1900**
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

eFiled
02/17/2023 5:01:03 PM
Superior Court
of the District of Columbia

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

|  |  |
|---|---|
| **EMMA MENDOZA**<br>5030 Parkcrest Dr.<br>La Porte, TX 77571<br><br>*Individually and on behalf of all others similarly situated,*<br><br>   Plaintiff,<br><br>   v.<br><br>**WP COMPANY LLC d/b/a THE WASHINGTON POST**<br>1301 K Street NW<br>Washington, DC 20071<br><br>   Defendant. | Case No.<br><br>**CLASS ACTION**   2023-CAB-001101<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Emma Mendoza, on behalf of Plaintiff and all others similarly situated, files this Complaint against Defendant WP Company LLC d/b/a The Washington Post for violation of the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). Plaintiff's claims arise from Defendant's practice of knowingly disclosing to a third party, Meta Platforms, Inc. ("Facebook"), data containing its digital subscribers' (i) personally identifiable information or Facebook ID (as further defined in paragraphs ¶¶ 34–37, below) ("FID") and (ii) digital files containing the specific videos viewed by Plaintiff and each video's corresponding URL ("Video

Media") (collectively, "Personal Viewing Information"). Plaintiff's allegations are made on personal knowledge as to Plaintiff and Plaintiff's own acts and upon information and belief as to all other matters.

## I. NATURE OF THE ACTION

1.     This is a consumer digital privacy class action complaint against Defendant, as owner of its website *WashingtonPost.com*, for violating VPPA by disclosing its digital subscribers' Personal Viewing Information to Facebook without obtaining proper consent.

2.     VPPA prohibits "video tape service providers," such as *WashingtonPost.com*, from knowingly disclosing consumers' "personally identifiable information," which "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape provider," without first obtaining express consent in a stand-alone consent form. U.S.C. § 2710(a)(3), (b).

3.     Like other businesses with an online presence, Defendant collects and shares the personal information of visitors to its website and mobile application ("App") with third parties. Defendant does this through cookies, software development kits ("SDK"), and pixels. In other words, digital subscribers to *WashingtonPost.com* have their personal information disclosed to Defendant's third-party business partners.

2

4.     The Facebook pixel is a code Defendant installed on its *WashingtonPost.com* website allowing it to collect users' data. More specifically, it tracks when digital subscribers enter the *WashingtonPost.com* website or App and view Video Media. Defendant's website tracks and discloses to Facebook the digital subscribers' viewed Video Media, and most notably, the digital subscribers' FID. This occurs even when the digital subscriber has neither shared nor consented to share such information.

5.     Importantly, Defendant shares the Personal Viewing Information—i.e., digital subscribers' unique FID and Video Media viewed—*together as one data point to Facebook.* Because the digital subscriber's FID uniquely identifies an individual's Facebook user account, Facebook—or any other ordinary person—can use it to quickly and easily locate, access, and view digital subscribers' corresponding Facebook profile. Put simply, Facebook pixel grants Facebook knowledge of the Video Media each of its subscribers view on the *WashingtonPost.com* site.

6.     Defendant uses the Personal Viewing Information to build more targeted advertising on its website which, in turn, generates greater revenue. Thus, without obtaining consent from its digital subscribers, Defendant profits from its unauthorized disclosure of its digital subscribers' Personal Viewing Information to

Facebook. Defendant reaps these secret profits at the expense of its digital subscribers' privacy and their statutory rights under VPPA.

7.     Because Defendant does not clearly and conspicuously inform *WashingtonPost.com* digital subscribers about this dissemination of their Personal Viewing Information—indeed, the process is automatic and *invisible*—they cannot exercise reasonable judgment to defend themselves against the highly personal ways *WashingtonPost.com* has used and continues to make money by using their personal data.

8.     Defendant chose to disregard Plaintiff's and hundreds of thousands of other *WashingtonPost.com* digital subscribers' statutorily protected privacy rights by releasing their sensitive personal data to Facebook. Accordingly, Plaintiff brings this class action for legal and equitable remedies to redress and put a stop to Defendant's practices of intentionally disclosing its digital subscribers' Personal Viewing Information to Facebook in knowing violation of VPPA.

## II.    JURISDICTION AND VENUE

9.     This Court has jurisdiction over this claim pursuant to D.C. Code § 11-921(a)(6).

10.     This Court has personal jurisdiction over Defendant pursuant to D.C. Code § 13-422.

4

11.     Defendant maintains its principal place of business in the District of Columbia; therefore, venue is proper in this district.

## III.    PARTIES

12.     Plaintiff Emma Mendoza is an adult citizen of Texas and is domiciled in Harris County, Texas. Plaintiff began her digital subscription to *WashingtonPost.com* around 2020 and continues to maintain the subscription to this day. Plaintiff has had a Facebook account from approximately 2015 to the present. During the relevant time period, she has used her *WashingtonPost.com* digital subscription to view Video Media through the *WashingtonPost.com* website and/or App while logged into her Facebook account. By doing so, Plaintiff's Personal Viewing Information was disclosed to Facebook pursuant to the systematic process described herein. Plaintiff never gave Defendant express written consent to disclose her Personal Viewing Information.

13.     Defendant is a Delaware limited liability company with its principal place of business at 1301 K Street NW, Washington, DC 20071. Defendant develops and operates *WashingtoPost.com*, which is used throughout the District of Columbia and the United States. In 2013, Defendant was purchased by Nash Holdings LLC, a Delaware limited liability company owned by Jeff Bezos, the founder of Amazon.

5

## IV.   FACTUAL ALLEGATIONS

### A.   Background of the Video Privacy Protection Act

14.   VPPA generally prohibits the knowing disclosure of a customer's video rental or sale records without the informed, written consent of the customer in a form "distinct and separate from any form setting forth other legal or financial obligations." 18 U.S.C. § 2710(b)(2)(B)(i). Under the statute, the Court may award actual damages (but not less than liquidated damages of $2,500.00 per person), punitive damages, equitable relief and attorney's fees. *Id.* at § 2710(c).

15.   VPPA was initially passed in 1988 to protect the privacy of individuals' and their families' video rental, purchase and viewing data. Prior to its enactment, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." S. Rep. No. 100-599 at 7-8 (1988).

16.   Senators at the time were particularly troubled by disclosures of records that reveal consumers' purchases and rentals of videos and other audiovisual materials. As Senator Patrick Leahy and the late Senator Paul Simon recognized, records of this nature offer "a window into our loves, likes, and dislikes," such that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive

form of surveillance." S. Rep. No. 100-599 at 7-8 (1988) (statements of Sens. Simon and Leahy, respectively).

17.    In proposing the Video and Library Privacy Protection Act, later codified as VPPA, Senator Leahy stated that "[i]n practical terms our right to privacy protects the choice of movies that we watch with our family in our own homes. And it protects the selection of books that we choose to read." 134 Cong. Rec. S5399 (May 10, 1988). Thus, the personal nature of such information, and the need to protect it from disclosure, is the inspiration of the statute: "[t]hese activities are at the core of any definition of personhood. They reveal our likes and dislikes, our interests and our whims. They say a great deal about our dreams and ambitions, our fears and our hopes. They reflect our individuality, and they describe us as people." *Id.*

18.    While these statements rang true in 1988 when VPPA was passed, the importance of legislation like VPPA in the modern era of data mining from online activities is even more pronounced. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Leahy emphasized the point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the

'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information."[1]

19.    In this case, Defendant chose to deprive Plaintiff and the Class members of that right by systematically disclosing their Personal Viewing Information to Facebook, without providing clear and conspcious notice to or obtaining proper consent from its digital subscribers.

**B.    *WashingtonPost.com*'s Digital Subscriptions**

20.    To view content on *WashingtonPost.com* beyond an allotted limit for a free account, users must subscribe, for which it is necessary to provide their personal information, starting with an email address:

---

[1] The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century, Senate Judiciary Committee Subcommittee on Privacy, Technology and the Law, http://www.judiciary. senate.gov/meetings/the-video-privacy-protection-act-protecting-viewer-privacy-in-the21stcentury (last accessed February 9, 2023).

## The Washington Post

🔒 **Secure & Encrypted**

REVIEW YOUR SUBSCRIPTION

# All-Access Digital                          ∨

*Plan* | **$4** every four weeks for one year, then **$12** every four weeks thereafter. **Cancel anytime.**

Due today                                              $12 **$4**

                                              Plus applicable sales tax

STEP 1 OF 2

**Add your email**

You'll use this email to sign in to our website and apps.

| Email address |
| --- |

**Create account and continue**

21.     Defendant operates a website in the U.S. accessible from a desktop and mobile device at *WashingtonPost.com*. It also offers an App available for download on Android and iPhone devices.

22.     On information and belief, all digital subscribers provide Defendant with their IP address, which is a unique number assigned to all information technology connected devices, that informs Defendant as to subscribers' city, zip code and physical location.

23.     Digital subscribers may also provide to Defendant the identifier on their mobile devices and/or cookies stored on their devices.

24.     When opening an account, Defendant does not disclose to its digital subscribers that it will share their Personal Viewing Information with third parties, such as Facebook. Digital subscribers are also not asked to consent to such information sharing upon opening an account.

25.     After becoming a digital subscriber, viewers have access to a variety of *WashingtonPost.com*'s Video and Audio Media on Defendant's digital platform, ranging from political videos accompanying news articles to cooking videos accompanying lifestyle articles.

26.     Notably, once a digital subscriber signs in and watches *WashingtonPost.com* Video Media, the digital subscriber is not provided with any notification at the time that they watch the Video Media that their Personal Viewing Information is being shared.

27.     Defendant fails to provide its digital subscribers with the ability to consent to the disclosure of their Personal Viewing Information at the time the disclosure is sought, i.e., the point when a subscriber views a video on Defendant's website.

28.     Defendant also does not provide its digital subscribers with an opportunity, in a clear and conspicuous manner, for them to withdraw on a case-by-case basis from the disclosure of their Personal Viewing Information or to withdraw from ongoing disclosures, at their election.

29.     Similarly, Defendant also fails to obtain digital subscribers' written consent to collect their Personal Viewing Information "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer," as VPPA requires.

**C.    How *WashingtonPost.com* Disseminates Digital Subscribers' Personal Viewing Information**

**1.    Tracking Pixels**

30.     Websites and apps use Facebook's pixel and SDK to collect information about user's devices and activities and send that to Facebook. Facebook then uses that information to show the user targeted ads.

31.     The Facebook tracking pixel, also known as a "tag" or "web beacon" among other names, is an *invisible* tool that tracks consumers' actions on Facebook advertisers' websites and reports them to Facebook. It is a version of the social plugin that gets "rendered" with code from Facebook. To obtain the code for the pixel, the website advertiser tells Facebook which website events it wants to track (e.g., Video Media) and Facebook returns corresponding Facebook pixel code for the advertiser to incorporate into its website.

32.     Defendant installed the Facebook tracking pixel, which enables it to disclose Plaintiff's and Class Members' Personal Viewing Information to Facebook, because it benefits financially from the advertising and information services that stem from use of the pixel. The pixel allows Facebook to build detailed profiles

11

about a website's users as those users browse the Internet to enable advertisers to serve them with targeted advertisements.

33.     When a *WashingtonPost.com* digital subscriber enters the website and watches Video Media on the website, the website sends to Facebook certain information about the viewer, including, but not limited to, their identity and the media content the digital subscriber watched. Specifically, *WashingtonPost.com* sends to Facebook the video content name, its URL, and, most notably, the viewers' Facebook ID.

## 2.     Facebook ID ("FID")

34.     An FID is a unique and persistent identifier that Facebook assigns to each user. With it, anyone ordinary person can look up the user's Facebook profile and name. When a Facebook user with one or more personally identifiable FID cookies on his or her browser views Video Media from *WashingtonPost.com* on the website or app, *WashingtonPost.com*, through its website code, causes the digital subscriber's identity and viewed Video Media to be transmitted to Facebook by the user's browser. This transmission is not the digital subscriber's decision, but results from Defendant's purposeful use of its Facebook tracking pixel by incorporation of that pixel and code into *WashingtonPost.com*'s website or App.

35.     Defendant could easily program its website and App to prevent its users' Personal Viewing Information from being automatically transmitted to

Facebook when a subscriber views Video Media. However, it is not in Defendant's financial interest to do so because it benefits it financially to provide this highly sought-after information.

36. Notably, while Facebook can easily identify any individual on its Facebook platform with only their unique FID, so too can any ordinary person who comes into possession of an FID. Facebook admits as much on its website. Indeed, ordinary persons who come into possession of the FID can connect to any Facebook profile. Simply put, with only an FID and the video content name and URL—all of which Defendant knowingly and readily provides to Facebook without any consent from the digital subscribers—any ordinary person can learn the identity of the digital subscriber and the specific video or media content they requested on *WashingtonPost.com*'s website. In other words, by obtaining a person's FID, any third-party can discover exactly which videos that person watched on Defendant's website, which is exactly the type of personally identifiable information that VPPA is intended to protect from unauthorized disclosure.

37. At all relevant times, Defendant knew that the Facebook pixel disclosed Personal Viewing Information to Facebook. This was evidenced from, among other things, the functionality of the pixel, including that it enabled *WashingtonPost.com*'s website and App to show targeted advertising to its digital subscriber's based on the products those digital subscriber's had previously viewed on the website or App,

13

including Video Media purchases, for which Defendant received financial remuneration.

**D.** ***WashingtonPost.com* Unlawfully Discloses Its Digital Subscribers' Personal Viewing Information to Facebook**

38.  Defendant maintains a vast digital database comprised of its digital subscribers' Personal Viewing Information, including the names and e-mail addresses of each digital subscriber and information reflecting the Video Media that each of its digital subscribers viewed.

39.  Defendant is not sharing anonymized, non-personally identifiable data with Facebook, as it represents. To the contrary, the data it discloses is tied to unique identifiers that track specific Facebook users. Importantly, the recipient of the Personal Viewing Information—Facebook—*receives the Personal Viewing Information as one data point*. Defendant has thus monetized its database by disclosing its digital subscribers' Personal Viewing Information to Facebook in a manner allowing it to make a direct connection—without the consent of its digital subscribers and to the detriment of their legally protected privacy rights.

40.  Critically, the Personal Viewing Information Defendant discloses to Facebook allows Facebook to build from scratch or cross-reference and add to the data it already has in their own detailed profiles for its own users, adding to its trove of personally identifiable data.

41.     Here's how it works. Once the user clicks on and watches the video in ther article, *WashingtonPost.com* sends the content name of the video the digital subscriber watched, the URL, and the digital subscriber's FID to Facebook.

42.     As a result of Defendant's data compiling and sharing practices, Defendant has knowingly disclosed to Facebook for its own personal profit the Personal Viewing Information of Defendant's digital subscribers, together with additional sensitive personal information.

43.     Defendant does not seek its digital subscribers' prior written consent to the disclosure of their Personal Viewing Information (in writing or otherwise) and its customers remain unaware that their Personal Viewing Information and other sensitive data is being disclosed to Facebook.

44.     By disclosing its digital subscribers Personal Viewing Information to Facebook—which undeniably reveals their identity and the specific video materials they requested from Defendant's website—Defendant has intentionally and knowingly violated VPPA.

**E.     Defendant Does Not Need to Disclose Personal Viewing Information to Operate its Website and App**

45.     Tracking pixels are not necessary for Defendant to operate *WashingtonPost.com*'s digital publications and sign-up digital subscriptions. They are deployed on Defendant's website for the sole purpose of enriching Defendant and Facebook.

46.     Even if an on-line publication found it useful to integrate Facebook tracking pixels, Defendant is not required to disclose Personal Viewing Information to Facebook. In any event, if Defendant wanted to do so, it must first comply with the strict requirements of VPPA, which it failed to do. As noted above, even Facebook forbids the disclosure of such information without first complying specifically with VPPA (and relevant state laws).

**F.     Plaintiff's Experiences**

47.     Plaintiff Emma Mendoza has been a digital subscriber of *WashingtonPost.com* from about 2020 to the present. Plaintiff became a digital subscriber of *WashingtonPost.com* by providing, among other information, her email address, IP address (which informs Defendant of the city and zip code in which she resides as well as her physical location), and any cookies associated with her device. As part of her subscription, she receives emails and other digital content from *WashingtonPost.com*.

48.     Plaintiff has had a Facebook account since approximately 2015 to the present. From 2020 to the present, Plaintiff viewed Video Media via *WashingtonPost.com*'s website and App.

49.     Plaintiff never consented, agreed, authorized, or otherwise permitted Defendant to disclose her Personal Viewing Information to Facebook. Plaintiff has never been provided any written notice that Defendant discloses its digital

subscribers' Personal Viewing Information, or any means of opting out of such disclosures of her Personal Viewing Information. Defendant nonetheless knowingly disclosed Plaintiff's Personal Viewing Information to Facebook.

50.     Because Plaintiff is entitled by law to privacy in her Personal Viewing Information, Defendant's disclosure of her Personal Viewing Information deprived Plaintiff of the full set of benefits to which she was entitled as part of being a *WashingtonPost.com* digital subscriber.

## V.     CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action on behalf of herself and all others similarly situated as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class (the "Class"):

> All persons in the United States with a digital subscription to an online website and/or App owned and/or operated by Defendant that had their Personal Viewing Information disclosed to Facebook by Defendant.

Excluded from the Class are Defendant, their past or current officers, directors, affiliates, legal representatives, predecessors, successors, assigns and any entity in which any of them have a controlling interest, as well as all judicial officers assigned to this case as defined in 28 USC § 455(b) and their immediate families.

52.     <u>Numerosity</u>. Members of the Class are so numerous and geographically dispersed that joinder of all members of the Class is impracticable. Upon information and belief, hundreds of thousands of members of the Class are widely dispersed

17

throughout the United States. Class members can be readily identified from Defendant's records and non-party Facebook's records.

53.    Typicality. Plaintiff's claims are typical of the claims of members of the Class. Plaintiff and members of the Class were harmed by the same wrongful conduct by Defendant in that Defendant caused Personal Viewing Information to be disclosed to Facebook without Plaintiff's or Class members' obtaining express written consent. Plaintiff's claims are based on the same legal theories as the claims of other Class members.

54.    Adequacy. Plaintiff will fairly and adequately protect and represent the interests of the members of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the Class. Plaintiff is represented by counsel with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically.

55.    Commonality. Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct. Questions of law and fact common to the Classes include:

(a)    Whether Defendant knowingly disclosed Class members' Personal Viewing Information to Facebook;

18

(b)     Whether the information disclosed to Facebook concerning Class members' Personal Viewing Information constitutes personally identifiable information under the VPPA;

(c)     Whether Defendant's disclosure of Class members' Personal Viewing Information to Facebook was knowing under the VPPA;

(d)     Whether Class members consented to Defendant's disclosure of their Personal Viewing Information to Facebook in the manner required by 18 U.S.C. § 2710(b)(2)(B); and

(e)     Whether the Class is entitled to damages, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and other preliminary and equitable relief as the court determines to be appropriate, as a result of Defendant's conduct.

56.     Superiority. Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be

pursued individually, substantially outweighs potential difficulties in management of this class action. Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

## VI. CLAIM FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710

57. Plaintiff incorporates paragraphs 1 through 56 by reference as if fully set forth herein.

58. VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" concerning any consumer to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C § 2710.

59. As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials."

60. Defendant is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those sales affect interstate or foreign commerce.

20

61.     As defined in 18 U.S.C. § 2710(a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider." As alleged in the preceding paragraphs, Plaintiff subscribed to a digital *WashingtonPost.com* plan that provides Video Media content to the digital subscriber's desktop, tablet, and mobile device. Plaintiff and all Class members are thus "consumers" under this definition.

62.     As defined in 18 U.S.C. § 2710(a)(3), "personally-identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." Plaintiff's Personal Viewing Information constitutes "personally identifiable information" under VPPA.

63.     Defendant knowingly caused Personal Viewing Information, including FIDs, concerning Plaintiff and Class members to be disclosed to Facebook. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified each Plaintiff and Class member to Facebook as an individual who viewed *WashingtonPost.com* Video Media, including the specific video materials requested from the website.

64.     As set forth in 18 U.S.C. § 27109(b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, either

21

(i) given at the time the disclosure is sought or (ii) given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner. Defendant failed to obtain informed, written consent under this definition.

65.    In addition, VPPA creates an opt-out right for consumers in 18 U.S.C. § 2710(2)(B)(iii). It requires video tape service providers to also "provide[] an opportunity for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." Defendant failed to provide, in a clear and conspicuous manner, an opportunity for consumers to opt out as required by VPPA.

66.    Defendant knew that these disclosures identified Plaintiff and Class members to Facebook. Defendant also knew that Plaintiff's and Class members' Personal Viewing Information was disclosed to Facebook because, *inter alia*, Defendant chose, programmed, and intended for Facebook to receive the video content name, its URL, and, most notably, the digital subscribers' FID.

67.    By disclosing Plaintiff's and the Class's Personal Viewing Information, Defendant violated Plaintiff's and the Class members' statutorily protected right to privacy in their video-watching habits. *See* 18 U.S.C. § 2710(c).

68.    As a result of the above violations, Defendant is liable to the Plaintiff and other Class members for actual damages related to their loss of privacy in an

22

amount to be determined at trial or alternatively for "liquidated damages not less than $2,500 per plaintiff." Under the statute, Defendant is also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by the Defendant in the future.

## VII.   RELIEF REQUESTED

69.   Accordingly, Plaintiff, on behalf of herself and the proposed Class, respectfully requests that this Court:

(a)   Determine that this action may be maintained as a class action pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, direct that reasonable notice of this action, as provided by Rule 23(c)(2), be given to the Class, and declare Plaintiff as the representative of the Class and her counsel as Class Counsel;

(b)   Declare that Defendant's conduct as described herein violates the federal VPPA, 18 U.S.C. § 2710(c)(2)(D);

(c)   Order Defendant to pay $2,500.00 to Plaintiff and each Class member, as provided by the VPPA, 18 U.S.C. § 2710(c)(2)(A);

(d)   Order Defendant to pay punitive damages, as warranted, in an amount to be determined at trial, 18 U.S.C. § 2710(c)(2)(B);

(e)   Order Defendant to pay prejudgment interest on all amounts awarded;

(f)   Order Defendant to pay restitution and all other forms of equitable monetary relief;

(g)   Provide for injunctive relief as pleaded or as the Court may deem proper; and

(h)   Enter an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit, 18 U.S.C. § 2710(c)(2)(C).

## VIII.   JURY DEMAND

70.   Plaintiff, on behalf of herself and the proposed Class, demands a trial by jury on all issues so triable.

Dated: February 17, 2023

Respectfully submitted,

*/s/ Jeff Ostrow*
Jeff Ostrow, Esq. (DC Bar No. 90003998)
**KOPELOWITZ OSTROW FERGUSON**
**WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: 954-525-4100
ostrow@kolawyers.com
sukert@kolawyers.com

Andrew J. Shamis, Esq.
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 400
Miami, FL 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com

*Counsel for Plaintiff and the Putative Class*

25



**Superior Court of the District of Columbia**
**Civil - Civil Actions Branch**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**(202) 879-1133 | www.dccourts.gov**

**Case Number:** 2023-CAB-001101

**Case Caption:** Emma Mendoza v. WP Company LLC d/b/a The Washigton Post

## INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| Friday, 05/19/2023 | 9:30 AM | Remote Courtroom 219 |
| **Please see attached instructions for remote participation.** | | |
| Your case is assigned to Associate Judge Ebony M Scott. | | |

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated above. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4.

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated below, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order.  Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

*Chief Judge Anita M. Josey-Herring*

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb219

   Meeting ID: 129 315 2924

2) When you are ready, click "Join Meeting".

3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.


**Or to Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

2) Enter the Webex Meeting ID listed above followed by "##"


**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.

2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.

3) For case questions, call the Civil Actions Branch Clerk's Office at (202) 879-1133.

## ACCESSIBILITY AND LANGUAGE ACCESS

### Persons with Disabilities:

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov . The D.C. Courts does not provide transportation service.

### Interpreting and Translation Services:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

### Servicios de interpretación y traducción:

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

### የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፡

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል፡፡ ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ፡፡ የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘሩውን የጸሀፊ ቢሮ (ክለርክ'ስ አፊስ) ያናግሩ፡፡ ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ፡

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው፡፡ የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ፡፡

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.



## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

 202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

  Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.

- You can also find the list of legal services providers at dccourts.gov/coronavirus by clicking on the link that says, "List of Legal Service Providers for Those Without an Attorney."

- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.

- Witnesses: tell the judge if you want a witness to testify at your hearing.

- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!

- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.

- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.

- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).

- Speak slowly and clearly so everyone hears what you are saying.

- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.

- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.

- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.

- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.

- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings
### (Click here for more information)



- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.

- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.

- Look at the camera when you speak and avoid moving around on the video.

- Wear what you would normally wear to court.

- Sit in a well-lit room with no bright lights behind you.

- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.




# District of Columbia Courts

# Tips for Using DC Courts Remote

The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings.  The Courts are committed to enhancing access to justice for all.

There are six remote access sites throughout the community which will operate: **Monday – Friday, 8:30 am – 4:00 pm.**

### The remote site locations are:



| | |
|---|---|
| **Remote Site - 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Remote Site - 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
| **Remote Site - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Remote Site - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Remote Site - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | **Remote Site - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*** No walk-ins at this location*** |

If you want to use a remote site location for your hearing, call **202-879-1900** or email DCCourtsRemoteSites@dcsc.gov **at least 24 hours before your hearing to reserve a remote access computer station**.  If you require special accommodations such as an interpreter for your hearing, please call **202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements**.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your **case number** and any **hyperlinks** provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.
4. A facial covering will be required for entry into the remote hearing location; if you do not have a facial covering one will be provided.

**\*Safety and security measures are in place at the remote sites.**

**Contact information to schedule your remote access computer station:**
Call:  **202-879-1900**
Email:  DCCourtsRemoteSites@dcsc.gov




# Consejos para usar los sitios de audiencia remota de los Tribunales de DC

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay seis sitios de acceso remoto que funcionarán de l**unes a viernes, de 8:30 am a 4:00 pm**.

### Los centros de acceso remoto son:

| | |
|---|---|
| **Sitio Remoto - 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Sitio Remoto - 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
| **Sitio Remoto - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Sitio Remoto - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Sitio Remoto - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | **Sitio Remoto - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*No se puede entrar sin cita previa* |



Si desea usar un sitio remoto para su audiencia, llame al **202-879-1900** o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov **al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto. Si** necesita adaptaciones especiales, como un intérprete para la audiencia, llame **al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.**

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***

1. Su **número de caso** y todos los **hipervínculos** que le hayan proporcionado los Tribunales para la audiencia programada.

2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.

3. Materiales para tomar nota, como papel y lápiz.

4. Para ingresar al sitio de la audiencia remota deberá llevar una mascarilla facial; si no tiene mascarilla facial, se le proporcionará una.

**\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.**

**Información de contacto para programar su** estación de computadora de acceso remoto:
Teléfono: **202-879-1900**
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

**Case Caption:**   Emma Mendoza v. WP Company LLC d/b/a The Washigton Post

**To:**   WP Company LLC d/b/a The          **Case Number:**   2023-CAB-001101
Washigton Post

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) Remote Initial Scheduling Conference on 05/19/2023 at 9:30 AM in **Remote Courtroom 219**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

  Link: dccourts.webex.com/meet/ctb219

  Meeting ID: 129 315 2924

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
  Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

WP Company LLC d/b/a The Washigton Post
1301 K ST NW
Washington DC  20071

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.